[No. 5845.]

BUTLER ET AL. v. THE HOME CO-OPERATIVE COMPANY.

1. Assignment—Approval—A home building company issued a contract with an insurance clause, providing that the holder might assign it to persons of certain qualifications, but that "notice of assignment must be given to the first parties within ten days thereof for their approval." An acceptance of payments from the assignee, and negotiating with him as such, was held an approval of the assignment.—(75-78)

2. Contracts — Construction — A contract issued by a home building company provided for certain monthly payments by the subscriber to the company, a portion thereof to be kept as a reserve fund to provide for future contingencies of the company, and a portion to apply on payments to be made by the company to secure a home for the subscriber; that, when $1,000.00 had been paid by the company for the subscriber, "this contract on

the part of the parties of the first part shall be fully performed." There was also a provision that, in case of the death of the subscriber "before all advance payments made to him have been returned," the company should pay the balance, if any, of the $1,000.00, and "cancel his indebtedness," and convey the property, if vested in the company, to the subscriber's wife. Held, that the latter clause was in effect an insurance on the life of the subscriber; that the payment of the $1,000.00 by the company did not terminate its liabilities; that it was under duty to cancel the subscriber's indebtedness; that the death of the subscriber discharged the debt; and that a sale of the home under a deed of trust given by the subscriber to secure the repayment of the $1,000.00 conveyed no title.—(78, 79)

*Error to Pueblo District Court*—Hon. N. WALTER DIXON, Judge.

Messrs. CROSSMAN & KELLY, for plaintiffs in error.

Mr. G. C. WELLS, for defendant in error.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

William Martin of Pueblo, Colorado, made a contract with The Home Co-Operative Company, a copartnership of Kansas City, which declares that its purpose is "to enable the party of the second part to obtain a home, and the use thereof, by making small payments in installments, by co-operating with others who contract likewise, and to that end." We do not feel called upon in detail to analyze or to characterize the scheme of which the written instrument is evidence, further than to ascertain the meaning of the portions involved in this case, since plaintiffs are not seeking to evade, but to enforce, its provisions; hence no question arises as to its fairness. Without specifying all of its numerous provisions, it is sufficient for the purposes of this case to say that thereunder Martin was required to pay a membership fee of $3.00 and, during a fixed period of time, $1.35 each

month, 10 cents of which sum monthly the co-operative company kept as a reserve fund to meet its contingent liabilities in performing these contracts, and the further sum of 25 cents to pay its expenses. Whenever the company accumulated the sum of $50.00 from such monthly payments upon this and like contracts, the contract having the lowest number, not then having matured, was deemed to have matured and the owner thereof was entitled to an installment of $50.00 per month, to be applied on the payment of a home for him, until the aggregate sum of $1,000.00 was paid in this manner; which was to continue with each maturing contract until it was matured and the like sum paid.

The contract contained also this clause: "When the said sum of one thousand dollars shall be paid for the benefit of the party of the second part then this contract on the part of the parties of the first part shall be fully performed." It further provided that until arrangements were made for purchasing real estate or building a house for the contract holder, the $50.00 per month should be kept intact by the co-operative company, thereafter to be paid out for such home. The contract holder was thereby required to furnish an abstract of title for the property to be purchased and if the same was approved by the company he was also to execute a deed of trust or mortgage or a contract of some nature, giving to the company a first lien on the land for the advances that it might make in the way of purchase, and the company was required to pay for his benefit the sum of a thousand dollars in installments of $50.00 per month, while he was thereafter to pay to the company the sum of $5.35 on or before the 10th of each month, 25 cents of which sum was for expenses of the company in looking after the property, 10 cents for the reserve fund, and $5.00 to be placed to his

credit, which should be applied toward the payment of the obligations which he sustained to the company for advancing the thousand dollars. Whenever the monthly payments of $5.00 each amounted to the sum of a thousand dollars, or to the actual sum which the company had advanced, its lien obtained under the mortgage or contract above referred to was to be discharged and the title to the property revested in him. The contract also contained this clause, which is material here:

"This contract may be assigned: provided it be to a person in good health, not more than fifty years of age, sober and industrious and able to perform the conditions of this contract. Notice of assignment must be given to the first parties within ten days thereof for their approval."

There was also a proviso in the contract that in case of the death of the contract holder before all advance payments made to him by the company had been returned to the company, the latter shall pay the balance, if any, of the thousand dollars contracted for, and shall cancel his indebtedness to it. By this feature, as defendants' counsel says in his brief, the company thereby insured Martin's life during the term covered by the contracts in such sum as should be unpaid thereon at the time of his death.

The foregoing are believed to be all the important parts of the original contract, two of which Martin held, executed at different dates. As contemplated and required by this original contract, Martin subsequently executed his certain obligation or contract which, after reciting that the co-operative company had purchased in the name of Martin a certain deed of trust on certain real estate, which Martin had theretofore given as the purchase price of the lots in question, which the co-operative company had agreed should be his home, provided that, in consideration of

such purchase and the covenants on the part of defendant company, Martin agreed to pay to it each month the sum of $5.35, as recited in the principal contract, and that he would keep the property insured and assign the policy of insurance to the co-operative company, and to pay all taxes and assessments and liens that might exist against the property in question and to keep the same in good repair. As collateral security for his contract, evidenced by the two writings, Martin executed his trust deed to the public trustee of Pueblo county upon the property referred to, embodying in the same by reference and making them a part of the trust deed, the contracts which he had theretofore entered into with the co-operative company.

Afterwards Martin assigned in writing all of his rights and interests in this contract to R. L. Butler, and the instrument of assignment, together with the contracts, were sent to the co-operative company at its home office for approval. Butler therein assumed the remaining obligations which Martin was thereby under to the company, and paid him at the time about $700.00 in money for his equity. He declined, however, to pay this money until satisfied that the company had approved of the assignment, but after having satisfied himself of such approval, the money was paid. Butler, it seems, received no formal notice from the company of its approval, but during his lifetime he made the payments called for by the contract as the assignee of Martin, and the company received the same. It was known to the local agent of the company at Pueblo, through whom the payments were made, that Butler was making them as the assignee of Martin, though he did not report that fact to his principal, but remitted the money to the company as if it had been paid by Martin. The record shows that the property was insured as called

for by the contracts, though the policies were not sent to the company and no demand was ever made for them. The taxes were paid, and, so far as the record discloses, all the conditions of the contract to be kept and observed by the contract holder were performed by Martin up to date of the assignment, and thereafter by Butler as assignee, up to the time of his death in November, 1904.

The two principal defenses urged below and here, and they are the controlling questions in the case, seem to be (1) that these contracts could not be assigned by Martin without the approval of the company, and though Martin might part with his equities thereunder and relieve himself of the performance of its obligations so long as the contract as to him is executory, he could not, without the consent of the co-operative company, compel it to accept Butler as its obligor; (2) under the clause of the contract above quoted, when the company paid the thousand dollars upon each of these contracts, as it did, the contract on its part was fully performed and became executed, and thereafter Martin could not assign it. The trial court apparently based its decision largely, if not altogether, upon the last proposition.

The assignment clause of the contract does not in terms make the validity of the assignment by the contract holder depend on its approval by the co-operative company, although notice of the assignment must be given to it within ten days for its approval. If, however, we assume that the approval of the company is essential thereto, we are satisfied that in law such approval was had. After his written assignment to Butler was made, it, together with the original contracts, were sent to the company for its approval of the transaction. No objection to the transfer was made at the time. There is some evidence that Sullivan, who, in fact, was doing business

as a copartnership under the name of The Home
Co-Operative Company, knew of and actually ap-
proved of the assignment when he was in Pueblo
shortly after its execution; but if we disregard this,
there is other and sufficient evidence of the approval
binding on the company.  Butler died in November,
1904.  In August of that year Druley, the Pueblo
attorney of the company, acting upon its instructions,
wrote to Butler as the holder of its contracts.
There is no evidence that Butler held any other con-
tracts with it except those assigned to him by Martin,
and it is entirely clear that the reference was to
Butler as the holder by virtue of this assignment.
In this letter it is stated that the company is satis-
fied with Butler as a responsible party; but, owing
to the fact that it wishes to refund, under a promise
theretofore made to the government, it did not feel
like transferring contracts.  Butler was asked there-
in if he did not wish to refund the loan by suffering
a reduction of 15 per cent. in accordance with the
plan of the company, and if he would do so, it would
carry out such plan; and to this question and the
further suggestion that he might get some other loan
company to take up the loan if he did not desire to
refund, so that he would be enabled to pay the bal-
ance due under the contract, Butler was asked to
make a proposition to be referred to the company if
he did not want to refund, and to give a prompt an-
swer.

After Butler's death the company was duly noti-
fied thereof and requested to release the deed of trust
in accordance with the provisions of the contract
hereinbefore referred to.  The reply from Sullivan,
who was, in fact and law, the company and doing
business in its name, was that Butler was not known
in the transaction, and referred the writer of the let-
ter, which gave notice of Butler's death, to Druley,

the company's attorney in Pueblo, who was instructed to foreclose the deed of trust because the monthly payments for several months had not been made.

We think this evidence binds defendant company, and it cannot now be heard to say that it did not approve of the assignment. Confirmatory of the same and with full knowledge of the assignment, it accepted, through its authorized agent at Pueblo, monthly payments from Butler which were due under, and applied them on, this contract. These circumstances, in connection with the letters to which we have referred, sufficiently show that it was satisfied with Butler as a risk, accepted his money, thereby recognizing him as a contract holder and must now so treat him.

The other question for solution is whether the contracts could be assigned at the time they were. The trial court apparently considered that when the company made the required payment of one thousand dollars, no further obligation rested upon it. Color is lent to this construction by the foregoing quoted language, but the two contracts and the trust deed above mentioned must be read in their entirety and considered as together constituting the contract of the parties. It is entirely clear that the company's obligation was not entirely extinguished by the payment of the sum of one thousand dollars, though that was the extent of its payment on the home. A portion of the payments which were made under the contract by the contract holder was kept in a reserve fund to provide for future contingencies of the company. This clearly contemplated the life insurance feature, or clause, of the contract, and since it provided that in case of his death before the full sum of a thousand dollars was repaid, the company should treat the unpaid portion as the amount of an insurance on the contract holder's life, it necessarily follows that a

material portion of its obligation still remained and that the contract was assignable by Martin so long as any material part of its obligation continued. As we have seen, the company, as well as Martin, gave this construction to the contract, Martin by assigning, the company by approving.

Other questions are argued by counsel; but we deem them either without merit or of no importance, for, however they might be decided, our conclusion would not be changed.

We are entirely clear that plaintiffs, as the representatives of Butler, the assignee, are entitled to the relief which they demand. At the time they brought the suit Martin's trust deed had not been foreclosed. Before the trial, as appears from the supplemental pleadings and the evidence, the public trustee, upon the request of defendant company, foreclosed the trust deed, and the property was sold thereunder to the company, or someone acting in its behalf, as the purchaser at the foreclosure sale. Holding, as we do, that under the terms of the contract the lien of the trust deed was extinguished upon the death of Butler, by the very terms of the contract the company agreed, in such contingency, to enter satisfaction. It follows that this sale was invalid and conveyed no title. The judgment of the district court is reversed and the cause remanded, with instructions to grant the appropriate relief to plaintiffs in accordance with the views expressed in this opinion.                                          *Reversed.*

Mr. Justice Gabbert and Mr. Justice Bailey concur.